## In re CLEVELAND'S CLAIM.

No. 10458—Opinion Filed April 29, 1919.

(180 Pac. 852).

(Syllabus.)

1. **Constitutional Law—Statutes—Construction—Intention of Lawmakers.**

It is a cardinal rule in the construction of Constitutions and statutes that the intention of the lawmakers, when ascertained, must govern, and that to ascertain the intent all the various portions of the legislative enactments upon the particular subject, including subsequent enactments, should be construed together and given effect as a whole.

2. **Statutes—Construction — Effect on Other Statutes.**

When it is apparent that a strict interpretation of a particular statute, construed alone, would defeat the intention of the Legislature as shown by other legislative enactments, which relate to the same subject, and which have been enacted in pursuance of and according to a general purpose in accomplishing a particular result, such construction should not be adopted

3. **Counties — Officers — Salaries — "Final Census."**

The salaries of county officers by reason of section 415 and section 3216, Revised Laws of 1910, and chapter 161 of the Session Laws of 1913, and section 1 of chapter 194 of the Session Laws of 1915, and section 1 of chapter 201 of the Session Laws of 1917 are determined upon the federal census of 1910, and the federal census to be taken, each ten years thereafter, except where a subsequent federal census has been taken under the supervision and direction of the Census Bureau of the Department of Commerce of the United States, and in those counties where said subsequent federal census has been taken under the direction of the Census Bureau of the United States, and said census has been duly certified to by the Director of Census, and said certificate has been filed with the county clerk of said county and with the secretary of state. Said census then becomes the final census of said county, and the basis for determining the salaries of the county officials in said county until a subsequent federal census is taken.

Appeal from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Claims before the Board of County Commissioners of Okmulgee County by Riley Cleveland, as County Judge, and by other county officers, for salaries. Cases consolidated in district court, on County Attorney's appeal from an order allowing claims, and from an affirmance of the order and a dismissal of appeal the County Attorney appeals. Affirmed in part, and in part reversed and remanded, with instructions.

Joe S. Eaton, for appellant.

Wade James, Chas. A. Dickson, G. E. Cassity, Riley Cleveland, and L. L. Cowley, for appellees.

McNEILL, J. This controversy arose by the county officers of Okmulgee county filing their respective claims for salaries with the county commissioners of Okmulgee county for the month of December, 1918, based upon a federal census taken August 15, 1918. Said claims were duly allowed by the county commissioners, and from the order allowing said claims the county attorney appealed to the district court. There all of the cases were consolidated, and the district court affirmed the decision of the county commissioners in allowing said claims, and dismissed the appeal and directed the county commissioners to pay said claims.

From the action of the distret court affirming said decision of the county commissioners, the cases, all being consolidated, are brought here on appeal as one case. The consolidated cases were tried practically upon an agreed statement of facts.

It was agreed that on the 4th day of June, 1918, there was presented to the county commissioners certain petitions requesting the taking of the census of said county as provided in section 415, Revised Laws of 1910. It is further agreed that the Census Department of the United States Government acting through the Secretary of Commerce, did take a census and enumeration thereof, and that the Census Bureau of the United States, acting through Samuel L. Rogers Director of Census, did cause said enumeration and census to be made.

That on the 15th day of October, 1918, the Department of Commerce, through the Bureau of Census at Washington, released for immediate use the census of Okmulgee county. This census was duly certified to by Samuel L. Rogers, the director of Census Department, as the census taken as of August 15, showing the population of Okmulgee county to be 50,345.

It was further agreed on the trial that a certified copy of census as certified by Samuel L. Rogers, showing the population to be 50,345, was filed with the county commissioners on the 22d day of November, 1918, and approved by the board of county commissioners, and a certified copy of the same was filed with the secretary of state.

This controversy arose over the question of whether the salary of the county officials should be based upon the census of 1910 or upon the last federal census as certified to by the Director of the Census Bureau of the United States Government. In determining this controversy there are many sections of the statute to be considered. The first section of the statute which is, or might be, applicable, and the one that was first enacted for the purpose of fixing of salaries since statehood, is section 415, Revised Laws 1910, Said section provides:

"Until the next federal census, or until a census shall be taken under the laws of this state, the census of Oklahoma taken by the United States government in the year nineteen hundred ten shall be the official census of the state, and all counties, municipalities and subdivisions thereof for all official purposes; Provided, that upon the petition of twenty-five per cent. of the qualified electors of any county, city or town, as shown by the vote cast for said state ticket at the last preceding general election, the board of county commissioners of said county shall cause an enumeration thereof to be made at the expense of the county, city or town, and when the same shall have been ascertained in such manner as they may direct, and the same shall be spread upon the records of the board of county commissioners and a certificate thereof filed in the office of the secretary of state, the same shall thereafter be taken as final census of said county."

This section provides that the census of 1910 should be the official census of the state, counties, and municipalities for all official purposes, which would include the fixing of salaries. Thereafter the Legislature of 1910 enacted a statute providing:

That "the salary of all county officers shall be based upon the federal census of 1910, and each additional ten years thereafter." Laws 1910, c. 69, § 33.

The 1910 Legislature fixed the salaries of all officials except the county superintendent and county commissioners. The Legislature of 1913 enacted chapter 161 of the Session Laws of 1913, being an act consolidating the office of the clerk of the district court, clerk of county court and superior court clerk, and consolidating the office of register of deeds and county clerk, and providing for deputies for said office, and fixing the salaries of said office; section 12 of said chapter being as follows:

"That in all cases where the population of the different counties is referred to in this act, it has reference to and shall be based upon the last federal census."

This act of the Legislature was amended by the Legislature of 1915 (chapter 6), being an act consolidating the same offices, and fixing the salaries to be paid for the same. Section 9 was amended to read as follows:

"The court clerk and the county clerk provided for in this act in each county having a population of 60,000 or less, as now or hereafter shown by the last federal census, shall each receive the same salary as full compensation for their services, as provided by law for the clerk of the district court and county clerk. In counties having a population of more than 60,000 as now or hereafter shown by the last federal census, the court clerk and county clerk, shall each receive a salary of twenty-one hundred dollars ($2,100.00) per annum."

In regulating the number of deputies of county officers the law states as follows:

"In counties having a population of more than 60,000 as now or hereafter shown by the last federal census."

The construction of this statute was before this court in the case of Bonnett v. State ex rel. Newer, 47 Okla. 503, 150 Pac. 198. Jutice Turner, rendering the opinion, stated as follows:

"There seems to be a distinction between an act which, as there, establishes a court in certain counties of the state of a certain population eo instante upon the taking effect of the act, and which said act would not be prospective in its operation, and an act which, as here, authorizes the clerk in counties having a certain population 'as shown by the last federal census,' which means next before he acts, whenever thereafter the necessity may arise, to appoint not more than a certain number of deputies with the consent of the board of county commissioners, and when, in the future, the public service demands it. Clearly, as the former act establishes courts immediately upon its taking effect and refers to conditions then existing, while the latter act establishes nothing at the time, but authorizes future action only, and as the words, 'as shown by the last federal census.' have as much reference to the last federal lcensus at the time the provisions of the act are invoked as they do to the last federal census at the time the act took effect, the latter act may be said to operate as well prospectively as not, and for that reason is constitutional, while the former is not. And so it would seem that, as these words which refer to the last federal census are applicable as well to the last federal

census at any time thereafter when the act is invoked as to the federal census at the time the act took effect, we, if required to pass, would be inclined to adopt that construction of the act which upholds, rather than destroys, its constitutionality, and to hold that the act is prospective in its nature, and extends to all counties which may subsequently acquire the prescribed population, and for that reason the act is not special but general legislation."

And again the court used the following language:

"But let that be as it may. Assuming that the intent to make the act operate prospectively is not made clear by the use of this language in the original act, we think it was made so when, by the amendatory act approved February 1, 1915, the Legislature put its intention so to do beyond question, and thereby made clear that it meant, when it used the words, 'as shown by the last federal census,' not only the last federal census next before the act took effect, but the last federal census as shown at any future time when the act is invoked by any county which may, by reason of increased population, come within a prescribed class."

The court holding that the term "last federal census" applied not only to the last federal census taken, but extends to the last federal census as shown at any future time when the act is invoked by any county which may, by reason of increased population, come within the prescribed class.

The same Legislature at that session in fixing the salary of the county superintendent fixed the salary, based upon the population, but does not refer to what census, or how the population should be determined, being section 19, chapter 219, article 2, on page 500, Session Laws 1913.

The Legislature of 1915, chapter 193, in fixing the salary of county assessors and changing the same from a percentage basis to a fixed salary, used the following language:

"That after the first Monday in January, 1917, the county assessor shall receive as his full compensation, the following, to be paid by the county, based upon a preceding federal census of such county." Section 2.

In section 1, chapter 194, of Laws of 1915, the Legislature, in fixing the salary of the clerk hire for the county superintendent, again used this language:

"As shown by the present or any federal census hereafter taken."

The Legislature of 1917, being section 1, chapter 204, in fixing the salary of the deputy county attorney, again used the language:

"As shown by the federal census next preceding such appointment."

And on page 254, c. 160, Session Laws of 1917, in fixing the fees and salaries of bailiffs, it was provided as follows:

"As now or hereafter shown by the last federal census."

And again, in fixing the salary of county attorneys of certain counties, being section 1 of chapter 201, on page 376, Session Laws of 1917, referring to certain counties, is used the following language:

"According to the last federal census, or any federal census hereafter taken."

And in fixing the salary of the county commissioners they made no mention as to what census was to govern.

This leaves in force and effect section 415, Revised Laws of 1910, and section 3216, Revised Laws of 1910, basing the salaries of county officials and deputies on the federal census of 1910 and each ten years thereafter.

The later enactment of the Legislature of 1913 in fixing the salary of certain county officers, and certain deputies, based same on the last federal census.

The later enactments of the Legislature of 1915, in fixing the salaries of certain county officers and of certain deputies, based upon the last federal census, or any federal census thereafter taken.

The later enactment of the Legislature of 1917, in fixing the salaries of certain other county officers and deputies based upon the last federal census, or any federal census thereafter taken.

The Legislature did not repeal any of said sections of the statute above referred to, unless it can be said they were repealed by implication, which the law does not favor unless the statutes cannot be construed together.

The words "federal census" are generally accepted to mean a census taken by and under the direction and supervision of the Census Department of the United States Government. This may be a census taken of each state and territory, or it may be a federal census taken of a certain state, or it may include a federal census of any subdivision or portion of any state; so long as it is taken by and under the direction of and supervision of the Census Department of the United States, and approved and certified to by them as the census of that state or subdivision, the same becomes the federal census.

In fixing the salaries of certain officers in

1913, 1915, and 1917, the different Legislatures did not attempt to repeal section 3216, Revised Laws of 1910, but left the same in force and effect. It can be readily seen that it has always been the intent of different Legislatures since statehood that the salaries should be based upon the federal census, and not upon a census taken by a county or by the state. It is also true that the Legislature intended the same census to apply to all county officers of that county, and not that one county officer's salary should be based upon one census, and another upon another, but that as to all county officials of the same county the salaries should be based upon the same federal census.

In the case at bar, we have the federal census of Okmulgee county, taken in the year 1910, and we have a subsequent federal census taken as of August 15, 1918. Did the Legislature intend that certain offices of the county should receive their salaries based upon the 1910 federal statute and others based upon a subsequent census? We do not think so. But if we construe all of the legislative enactments together and give force and effect to each of them, we must conclude that the Legislature intended that the salaries of county officials should first be based upon the federal census of 1910 and each ten years thereafter, unless there was a federal census taken of said state or of any counties between said dates. If the federal government between said dates should take a federal census of each county in the state, then the salaries would be based upon that federal census, or if the federal government would take a census of any particular county and certify to the same as the census of said county, then that census would be taken as the official census of that county in fixing the salaries of the officials.

We, therefore, hold that the federal census taken August 15, 1918, supersedes the federal census of 1910 in regard to fixing the salaries of the Okmulgee county officials, and that the salaries shall be based upon the federal census of 1918, or until the federal census of 1920, and under the present enactment of laws the census at that time would supersede the federal census of 1918, and the salaries would be based upon that federal census.

As to whether this would be in violation to the Constitution, prohibiting an increase of salary during the term of office, this question has been settled by this court in the case of Board of County Commissioners of Delaware County v. Williams, 38 Okla. 738, 135 Pac. 420. The court, speaking through Chief Justice Hayes, said:

"So, in the instant case, the officer's salary is made to depend upon the population of his county at biennial periods; and the fact that the census at one of the periods, occurring after his term began, exceeds the population as shown by the preceding census, and thereby operated to give the officer a greater compensation for the latter period of his term than for the first period, does not constitute a change of salary by operation of any law enacted during his term, but is a difference in salary resulting from the operation of a statute enacted before his term began. The same reasoning and conclusion apply to the amount to be allowed for clerk hire."

As to the contention that since the taking of said federal census there had been additional territory added to said county wherein the population was increased 1,000. This increased population would have no force and effect upon the salaries, but the strict letter of the law must govern, and the federal census as shown by the Census Department of the United States would be the census that controlled, and the salaries should be based upon that population. One or two of the county officers would be affected by this increase, but as to the majority it would make no difference.

It will be unnecessary to render separate and distinct opinions in each case, but the not void for want of mutuality; that affirmed in so far as the salaries of the county officers are concerned, wherein the salaries of the same were based upon the population of 50 345 as shown by the last federal census of Okmulgee county, and reversed as to those officers who filed claims against the county upon a population of 51,345, and remanded with instructions to the county commissioners to allow the salaries based upon the last federal census showing the population of Okmulgee county to be 50 345.

OWEN, RAINEY, HARRISON, PITCHFORD, and JOHNSON, JJ., concur.