### BOARD OF COMMISSIONERS OF ST. JOSEPH COUNTY ET AL. *v.* CROWE.

[No. 26,955. Filed May 17, 1938. Rehearing denied July 13, 1938.]

*James A. Ross, Harry T. Ice, Matson, Ross, McCord &*

*Clifford, J. Clifford Potts, Albert L. Doyle* and *George L. Rulison,* for appellants.

*Lewis Hammond, Walter R. Arnold* and *Herbert J. Patrick,* for appellee.

Roll, C. J.—By the provisions of Ch. 82, Acts 1919, p. 449, as amended by Ch. 65, Acts 1921, p. 143, §7839 Burns' Revised St. 1926, the salary of county auditors, in counties having a population of not less than one hundred twenty-five thousand (125,000) and not more than two hundred thousand (200,000) inhabitants, as shown by the last preceding United States census, and whose total assessed valuation was not less than one hundred ten million dollars ($110,000,000) nor more than six hundred million dollars ($600,000,000), shall be fifteen thousand dollars ($15,000) per year. On April 1, 1930, St. Joseph County had a total assessed valuation of more than one hundred ten million dollars ($110,000,000) and less than six hundred million dollars ($600,000,000), and a population of more than one hundred twenty-five thousand (125,000) and less than two hundred thousand (200,000) inhabitants.

Appellee as auditor of St. Joseph County received a salary of ten thousand dollars ($10,000) per year, for each of the years 1928, 1929, 1930, 1931, and 1932 under the provision of the Acts of 1911, Ch. 109, p. 188, §7838 Burns' Revised St. 1926, and the provisions of Ch. 81, Acts 1929, p. 275 (*status quo* law).

By this action appellee seeks to recover additional salary, as such auditor, from April 1, 1930, to December 31, 1932, and predicates his action upon the theory that the *status quo act* of 1929, *supra,* is unconstitutional, and makes it appear by the allegations of his complaint that during all the time from April 1, 1930, to December 31, 1932, St. Joseph County had an assessed valuation of more than one hundred ten million dollars ($110,000,000) and less than six hundred million dollars

($600,000,000), and by the United States census filed April 1, 1930, it had a population of more than one hundred twenty-five thousand (125,000) and less than two hundred thousand (200,000) inhabitants, and therefore he was entitled to a salary of fifteen thousand dollars ($15,000) per year, as provided by the Acts of 1919, as amended by the Act of 1921, *supra*.

Appellant filed a demurrer to this complaint which was sustained and appellee refused to plead further and judgment was rendered against him. An appeal was taken to this court, and this court held the complaint stated a cause of action and directed the trial court to overrule the demurrer filed by the Board of County Commissioners, and for further proceedings, on the ground that the *status quo* law of 1929 was unconstitutional. See *Crowe* v. *Board of Commissioners* (1936), 210 Ind. 404, 3 N. E. (2nd) 76.

After the cause was remanded, the trial court overruled the demurrer, and appellant board filed answer, wherein they challenge the constitutionality of the 1919 Act, as amended in 1921, *supra,* and also filed a cross-complaint seeking to recover part of the salary paid appellee on the theory that appellee's salary was governed by the Act of 1895, as amended in 1913, §7814 Burns' Ann. St. 1926.

Appellants Chidester and Mays, as citizens and taxpayers, intervened and filed answer raising the same questions as was raised by the answer filed by the board of commissioners. Appellee filed a demurrer to these answers which was sustained. Appellee filed answer in general denial to the cross-complaint. There was a trial and judgment for appellee. Appellant appeals and by proper assignment presents to this court the question of the constitutionality of Ch. 82, Acts 1919, p. 449, §7839 Burns' Rev. St. 1926.

Appellant says that said act of 1919 violates the 14th

440

Clause of §22 of Art. 4, of the Constitution of the State of Indiana. This section of the Constitution reads as follows:

"In relation to fees or salaries; except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required;" (As amended March 14, 1881.)

Appellant contends that the 1919 Act if applied to St. Joseph County for the period covered by the complaint would provide a salary for the auditor of St. Joseph County, which, when considered in relation to the entire body of laws fixing the salary for the office of auditor in counties throughout the state, does not grade the compensation of the auditor of St. Joseph County in proportion to the population and the necessary services required; but does provide compensation for said auditor for said period which is several times greater than the salary provided for like offices in other counties of the state having a population far in excess of the population of St. Joseph County, and requiring more services than are required in St. Joseph County.

Appellee contends that the constitutionality of the 1919 act, as amended in 1921, *supra,* was passed upon by this court in the former appeal. See *Crowe* v. *Board of Commissioners, supra,* and that the law announced therein became the law of the case and is binding on all the parties and upon the court in this appeal. The question first to determine is: Did this court pass upon this question in the former appeal? If it did, appellee's contention must be sustained.

The sufficiency of the complaint to state a cause of action was challenged by a demurrer. This court held on the former appeal that it did. In order to reach this conclusion, the constitutionality of the statute upon which the cause of action was declared must, of neces-

sity, be involved and determined. It is true that the court's attention was not focused upon this particular statute nor did it consider specifically the constitutional objection here raised. The reason why this question was not discussed in the former opinion appears from the face of the opinion. It is stated in the opinion, "It is conceded that these statutes are constitutional." (Referring to Secs. 7838 and 7839 Burns' Ann. St. 1926.)

The opinion proceeded upon the concession above made. But the validity of the 1919 act was essential to the sufficiency of appellee's complaint and was therefore necessarily involved in that decision. In the case of *Forgerson* v. *Smith* (1895), 104 Ind. 246, 247, 3 N. E. 866, it was said:

> "But where the questions are necessarily involved, and where the conclusion declared could not have been reached without either expressly or impliedly deciding such questions, the judgment on appeal rules the case throughout all its subsequent states. The decision is an adjudication concluding the courts and the parties." See cases there cited.

Upon this proposition we hold that the constitutionality of the 1919 act here challenged was adjudicated in the former appeal and as it was there held constitutional, it concludes us on this appeal.

Other questions are presented by the record and briefs, but they were all decided adversely to appellant in the former appeal and it is unnecessary to again discuss them in this opinion.

Judgment affirmed.

### ON REHEARING.

ROLL, J.—It is pressed with vigor on rehearing, by appellants, and especially so in the brief filed by the Attorney-General as Amicus Curiae, that chapter 125 of the Act of 1911, is invalidated by §2, Art. 15, of the Constitution of Indiana, insofar

as the salary for 1930 is concerned, as the above section of the Constitution forbids the increase in the salary of any officer during the term for which such officer was elected.

Chapter 125, Acts 1911, provides that in counties having a population of more than 150,000 according to the last preceding United States Census, the salary of the clerk of the circuit court shall be thirty-one thousand dollars ($31,000.00) ... In April, 1930, the census of the United States was filed, which showed St. Joseph County to have a population in excess of 150,000. Appellee insists that after the census was filed showing St. Joseph County with a population in excess of 150,000 he was entitled to the salary as fixed by chapter 125, Acts 1911, *supra*. As stated above, appellants contend that by the above constitutional provision such increase is prohibited.

This court said in *Crowe* v. *Board of Com'rs of St. Joseph County et al.* (1930), 210 Ind. 404, 408, 3 N. E. (2nd) 76 (which was a companion case on the first appeal) :

"There is no merit in the contention that an increase in the salary of an officer during his term is involved. The salary was fixed before he was elected. The amount he was to receive from time to time was made to depend upon the population of the county. It is as though the statute in existence when the officer was elected had provided that he should receive $1,000 the first year and $2,000 the second year of his term. In the statute under consideration the Legislature chose to make the amount of salary depend upon population shown by the United States census. It might continue during the latter part of the term the same as before the census. It might be more if the population increased. It might be less if it decreased."

In *State ex rel. Harvey* v. *Linville et al.* (1927), 318 Mo. 698, 300 S. W. 1066, it was held that an increase of

officer's salary, under a statute in force at the time of his election, conditioned upon an increase in population, does not violate a constitutional provision prohibiting increase of salary during term of office since the salary is fixed by law which permits ascertainment of amount of salary at subsequent periods.

In *Board of Commissioners, etc.* v. *Williams* (1913), 38 Okla. 738, 743, 135 Pac. 420, the court said:

"The foregoing provision of the Constitution, prohibiting a change of salary of an officer during his term of office, does not require that the salary of an officer shall be uniform throughout his term. It requires only that there shall be no difference in his salary during the different parts of his term, except such as result from the operation of a law enacted prior to his election or appointment. A statute enacted before an officer is elected might provide that his compensation should consist of the fees of his office. Under such statute it is entirely probable that the fees of the first year of a two-year term would greatly exceed those of the second year, or vice versa, yet such a difference in the salary of such respective years would not constitute a change in the salary of his office, in violation of the foregoing provision of the Constitution. So, in the instant case, the officer's salary is made to depend upon the population of his county at biennial periods, and the fact that the census at one of the periods occurring after his term began exceeds the population as shown by the preceding census, and thereby operated to give the officer a greater compensation for the latter period of his term than for the first period, does not constitute a change of salary by operation of any law enacted during his term, but is a difference in salary, resulting from the operation of a statute enacted before his term began. The same reasoning and conclusion apply to the amount to be allowed for clerk hire."

In *Puterbaugh* v. *Wadham et al.* (1912), 162 Calif. 611, 616, 123 Pac. 804, which in all its essential facts presented the identical question as is here presented, the court said:

"Section 9 of article 11 is an inhibition directed

to the Legislature because it applies not only to attempted increases of salaries but to efforts to extend terms of office. The latter part of the section is unquestionably a limitation upon legislative power, and the former from its association should be similarly construed. We think the section could have no application to the change in salary due to the passing of a city, not by legislative act, but by increased population, from one class to another— not a legislative but an automatic change. When petitioner was elected justice of the peace, the statute established his salary at $2,000 a year because of the population of San Diego; but the same statute fixed the salary of a justice of the peace in a city of the second class, and the evolution of the city into that class did not increase his salary as such—it merely placed him in a new class in which he was entitled to a certain salary which happened to be in excess of that payable to him when he took the office. The possibility of a change in his status when the city should grow into another class must have been in the contemplation of the officer and of the people who elected him. That this change would operate to increase his salary must also have been within their contemplation, and section 9 of article 11 of the Constitution, which was designed to protect taxpayers from legislative interference with their rights by increasing the compensation paid to their elected officers without consent of the electorate, would have no application to such a case as this."

*Yuma County* v. *Sturges* (1914), 15 Ariz. 538, 140 Pac. 504, was a case where the county officer's salary was by statute determined by census and population. The same facts and statutory provisions as well as the constitutional provision was presented in that case as we have here. The court, after quoting from the Puterbaugh case, *supra,* said (p. 543) :

"Under the facts before us the reasoning in the Puterbaugh case is especially forcible. Under the classification in force when appellee went into office, Yuma county was a county of the first class, with an assessed valuation less than $9,000,000; his compensation was therefore fixed at $2,200 per annum.

In August, 1913, Yuma county, while still remaining a county of the first class, nevertheless its equalized assessed valuation became more than $9,000,000, and appellee's compensation was therefore fixed at $2,500 per annum. Not by virtue of any subsequent legislative action, but solely by the automatic operation of the very law in effect at the beginning of the term, and which law definitely prescribed and fixed the compensation incident to the office, the amount thereof being graded according to the determination of an extraneous fact, to wit, the fact of the equalized assessed valuation.

"Let us compare the statute of 1901 with a statute supposed. If the statute existing when appellee went into office made provision that the term of his office shall begin on the 14th day of February, 1912, and end on the 31st day of December, 1914, and that such officer shall receive a salary of $2,200 for the first year of the term, and thereafter during the remainder of said term the officer shall receive a salary at the rate of $2,500 per annum, and that the salary of such officer so provided shall be paid monthly, one could not be persuaded that the provisions of such a statute are within the inhibition of the Constitution prohibiting the compensation of a public officer from being increased during his term of office. In this instance, also, the amount would be graded according to the determination of an extraneous fact, to wit, the fact of one year of the term having expired. The law as it is and the one supposed, though differing in the medium of expression do not differ in their application. The two statutes differ in words, but not in the effect of the words.

"The constitutional inhibition has no application here, and the judgment of the lower court awarding appellee compensation for the month of September, 1913, in the sum of $208.33, being at the rate of $2,500 per annum, is correct."

To the same effect is the case of *Board of Commissioners, etc.* v. *Mathews* (1931), 147 Okla. 296, 296 Pac. 481.

Other cases to like effect might be cited in support of the above view, but we think the above cases are suffi-

cient to show the holding of courts in other jurisdictions.

As we view this question, the salary of the county clerk or the auditor of St. Joseph County was not changed during the term within the meaning of the constitutional inhibition. The statute fixing the salary of the above officers was passed before appellees were elected. At that time the salary was fixed and determined. If the census taken by the Government showed an advancement into a higher class the salary of the county officers would be a certain amount. If the census showed a decrease, such as would place St. Joseph County in a lower class, the salary would be decreased to a different amount. We hold that §125, Acts 1911, does not offend the constitutional provisions against increase of salary during the term of office.

Rehearing denied.

This opinion controls and applies to the following cases which present substantially the same question: *Board of Commissioners, etc.* v. *Nevins et al.,* No. 26,954; *Board of Commissioners, etc.* v. *Nevins,* No. 26,974; *Board of Commissioners et al.* v. *Crowe,* No. 26,975.